**In re Abraham I. SOKOL, Debtor.**

**The STATE of New York, Plaintiff,**

v.

**Abraham I. SOKOL, Defendant.**

**Bankruptcy No. 94 B 40195 (SMB).**
**Adv. No. 94–8293A.**

United States Bankruptcy Court,
S.D. New York.

Aug. 9, 1994.

As Corrected Aug. 11, 1994.

Edward J. Kuriansky, Special Prosecutor for Medicaid Fraud Control, New York City (Elizabeth T. Bogren, Sp. Asst. Atty. Gen., of counsel), for plaintiff.

Abraham I. Sokol, M.D., pro se.

## MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STUART M. BERNSTEIN, Bankruptcy Judge:

Abraham Sokol ("Sokol") filed a voluntary Chapter 7 petition on January 13, 1994. On April 22, 1994, the State of New York ("State") commenced an adversary proceeding under 11 U.S.C. § 523 to determine the dischargeability of a debt up to $5 million that Sokol allegedly owes to the State stem-ming from a state court conviction for grand larceny in the second degree. As part of his sentence, Sokol was directed to pay restitu-tion in the sum of $222,255.38 (the "Restitu-tion Judgment") and the Restitution Judge-ment forms a subpart of the State's overall claim. The balance of the State claim de-rives from its Treble Damage Claim which is described below.

The State now moves for summary judg-ment pursuant to Fed.R.Civ.Proc. 56 and Bankruptcy Rule 7056. For the reasons stated below, the Court grants summary judgment as to the nondischargeability of the Restitution Judgment in the amount of $222,-455.38 and also grants summary judgment as to the unliquidated Treble Damage Claim.

## FACTS

Sokol practiced as a radiologist and provid-ed services under New York's Medicaid pro-gram during the period April 1987 through June 1988. Affidavit of Elizabeth T. Bogren in Support of State's Motion for Summary Judgment, sworn to July 11, 1994 ("Bogren Affidavit"), ¶ 4. In 1991, Sokol and eight other co-defendants were indicted and charged, *inter alia*, with stealing over $1 million from the State's Medicaid program (Bogren Affidavit, ¶ 5; Ex. 4). On July 9, 1992, following a jury trial, the jury acquitted Sokol of thirty-two counts of offering a false instrument for filing in the first degree but convicted him of one count of grand larceny by false pretense in the second degree. (Bo-gren Affidavit, ¶ 5; *see* Sokol's Pro–Se An-swer, ¶ 4; Ex. 6, p. 6).

In addition to ruling that Sokol serve a mandatory minimum jail term of three and a half years in state prison, Justice Scarpino of the Supreme Court of the State of New York, County of Westchester County also sentenced Sokol to pay the Restitution Judg-ment which was entered on August 25, 1992 (Bogren Affidavit, ¶ 6; Ex. 6 at 52–53; Ex. 7). In liquidating the amount of the Restitu-tion Judgment, Justice Scarpino determined that the jury had concluded Sokol was "guilty of taking money, somewhere between $50,000 to under a million dollars." (Ex. 6, p. 37). And furthermore, "[i]t was clear to [Justice

Scarpino] that [Sokol] had violated [his] fiduciary duty, the duty to protect that Medicaid number and the funds it had access to." Although the Justice believed that the law permitted him to impose a restitution judgment consisting of the full Medicaid loss of 1.25 million dollars, the Justice chose "a more realistic figure" of $222,255.38 [1]. (*See* Ex. 6, pp. 51–53).

The balance of the State's claim in this case consists of its claim to recover Treble Damages (*i.e.*, the Treble Damage Claim) which it is permitted to do under State law. In May 1991, the State sued Sokol to recover treble damages under the New York State Social Services Law Section 145–b for injuries caused to the State as a result of Sokol's Medicaid fraud. (Bogren Affidavit, ¶ 8). The action was initially stayed during the pendency of the criminal action pursuant to N.Y.Civ.Prac.L. & R. 1311(1)(a) (McKinney Supp.1994), and is now stayed by Sokol's filing under Chapter 7 of the Bankruptcy Code.

## DISCUSSION

### A. Introduction

■ The State argues that its Restitution Judgment and Treble Damage Claim are not dischargeable, relying primarily on Sections 523(a)(4) and 523(a)(7) of the Bankruptcy Code.[2] These Sections provide as follows:

(a) A discharge under Section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

(7) to the extent such a debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty—

■ The Restitution Judgment is not dischargeable as a matter of law. In *Kelly v.*

*Robinson,* 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court held that Section 523(a)(7) "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." *Id.* at 50, 107 S.Ct. at 361. Restitution orders made part of criminal sentences are penal in nature, and imposed to further the penal and rehabilitative interests of the state rather than to compensate the victim. *Id.* at 53, 107 S.Ct. at 363. Hence, they are not dischargeable.

■ At first blush, Sokol's case appears distinguishable from *Kelly v. Robinson.* In *Kelly,* the Supreme Court parsed the Connecticut statute at issue, concluding that since it did not require restitution in the amount of the harm caused, the restitution in that case was penal rather than compensatory. 479 U.S. at 52–53, 107 S.Ct. at 362–63. In New York, on the other hand, a judgment of restitution exceeding $15,000.00 must be based on principles of compensatory damages. *See* N.Y.Penal § 60.27(5)(b) (McKinney 1987 and Supp.1994); *Kuriansky v. Professional Care, Inc.,* 158 A.D.2d 897, 551 N.Y.S.2d 695, 697 (3d Dept.1990).

■ Nevertheless, even if the Restitution Judgment is designed to compensate the State for damage caused by Sokol, it is still penal for purposes of § 523(a)(7) because it is imposed as part of a criminal sentence. *See Thompson v. Commonwealth (In re Thompson),* 16 F.3d 576, 580 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 2709, 129 L.Ed.2d 836 (1994); *Tennessee v. Hollis (In re Hollis ),* 810 F.2d 106, 108 (6th Cir.1987); *In re Zarynski,* 771 F.2d 304, 306 (7th Cir. 1985). The import of *Kelly v. Robinson* is that the Bankruptcy Code's dischargeability provisions are not intended to interfere with state criminal sentencing procedures. Judgments of restitution, regardless of how they are computed, are penal and not dischargeable under 11 U.S.C. § 523(a)(7).

### B. Collateral Estoppel

■ The dischargeability of the Restitution Judgment under 11 U.S.C. § 532(a)(4)

---

[1]. The remaining $200 in the Restitution Judgment represents costs.

[2]. The State also relies on § 523(a)(2), but in light of the Court's determination, it need not reach the issue of dischargeability under that section.

depends on the applicability of the doctrine of collateral estoppel.[3] The doctrine is intended to promote judicial efficiency by fostering the principle of finality, *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987), and for it to apply:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Id.; accord Beck v. Levering,* 947 F.2d 639, 642 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1937, 118 L.Ed.2d 544 (1992).

▪ Collateral estoppel can apply to criminal convictions but not to acquittals. The standard of proof in a criminal case is "beyond a reasonable doubt". N.Y.Crim.Proc. § 70.20 (McKinney 1992). In civil cases in general, and dischargeability proceedings in particular, however, the standard of proof is a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). A conviction under the higher standard of proof in criminal cases satisfies the lower threshold imposed in civil cases. An acquittal under the higher standard, on the other hand, has no preclusive effect in a civil case adjudicated under the lower evidentiary standard.

▪ Section 523(a)(4), quoted above, makes debts that are incurred as a result of larceny nondischargeable. For purposes of Section 523(a)(4), larceny is defined by federal common law, *Allstate Life Ins. Co. of New York v. Guerrerio (In re Guerrerio ),* 143 B.R. 605, 610 (Bankr.S.D.N.Y.1992); *Nassau Suffolk Limousine Assoc., Inc. v. Jardula (In re Jardula ),* 122 B.R. 649, 653 (Bankr.

E.D.N.Y.1990), and requires proof of the debtor's fraudulent intent in taking the creditor's property. *State of New York v. Kelly (In re Kelly ),* 155 B.R. 75, 78 (Bankr. S.D.N.Y.1993).

▪ The law of New York State pertaining to larceny may, but does not always, require fraudulent intent. Under the New York Penal Law, a person commits "larceny" when he wrongfully takes, obtains, or withholds another's property with intent either to deprive that person of his property or to appropriate it for himself. N.Y.Penal § 155.-05(1) (McKinney 1988). The law divides larceny into five types: (a) common law larceny (which includes obtaining property by false pretenses), (b) acquiring lost property, (c) issuing a bad check, (d) false promise and (e) extortion.

▪ Sokol was indicted, *inter alia,* for grand larceny in the first degree although he was ultimately convicted of grand larceny in the second degree, a lesser included offense.[4] According to the indictment, the State charged Sokol with larceny by submitting Medicaid reimbursement claims "which falsely represented that they provided radiological services in connection with the diagnosis and treatment of Medicaid payments." (Bogren Affidavit, Ex. 4 (Count One)).

In his opposition, Sokol admits that he was convicted of larceny by false pretenses, and that one of the elements of the crime is an intent to defraud. *Debtor's Memorandum of Law in Support of His Response to State's Motion for Summary Judgment,* dated August 1, 1994, at p. 3. The case law agrees. *See, e.g., People v. Chaitin,* 94 A.D.2d 705, 705–06, 462 N.Y.S.2d 61, 63 (2d Dept.1983) (larceny by false pretenses requires the intent to deprive an owner of property, the making and knowledge of a false representation, and the acquisition of property induced by the false representation), *aff'd,* 61 N.Y.2d

---

3. The fact that Sokol's criminal conviction may be on appeal does not affect its finality for collateral estoppel purposes. *Huron Holding Corp. v. Lincoln Mine Operating Co.,* 312 U.S. 183, 189, 61 S.Ct. 513, 515–16, 85 L.Ed. 725 (1941); *Petrella v. Siegel,* 843 F.2d 87, 90 (2d Cir.1988); *Cerbone v. County of Westchester,* 508 F.Supp. 780, 785 (S.D.N.Y.1981).

4. The primary difference between grand larceny in the first degree, N.Y.Penal § 155.42 (a Class B felony), and grand larceny in the second degree, *id.* § 155.40 (a Class C felony), concerns the value of the property taken. However, a person can commit grand larceny in the second degree, regardless of the value of the property, if he uses extortionate means. N.Y.Penal § 155.40(2).

683, 460 N.E.2d 1082, 472 N.Y.S.2d 597 (1984); *People v. Powell,* 22 A.D.2d 959, 959, 256 N.Y.S.2d 117, 118 (2d Dept.1964) (larceny by false pretenses requires a false representation made with the criminal intent to defraud). Hence, his conviction also satisfies the federal common law standard for larceny, and his conviction collaterally estops him from challenging the non-dischargeability of the Restitution Judgment under 11 U.S.C. § 523(a)(4).

### C. Dischargeability of the Treble Damage Claim

■ The State is also entitled to a determination that its Treble Damage Claim is not dischargeable under to 11 U.S.C. § 523(a)(7). Pursuant to N.Y.Soc.Serv. § 145–b (McKinney 1983), the State can recover treble damages for any injury caused by one who knowingly submits a false statement or representation in order to obtain payment from public funds for goods or services provided or purportedly provided. The Treble Damage Claim does not represent compensatory damages, but instead, constitutes a civil fine or penalty which, under 11 U.S.C. § 523(a)(7), is "automatically nondischargeable." *State v. Kelly (In re Kelly),* 155 B.R. 75, 79 (Bankr. S.D.N.Y.1993), regardless of its amount.

■ In granting summary judgment, the Court is not deciding the amount, if any, of the State's claim that is recoverable under Section 145–b.[5] Although the state court imposed a restitution penalty in excess of $200,000.00, the jury convicted Sokol of stealing at least $50,000.00 but less than $1 million. At Sokol's sentencing, the state court nevertheless entered a Restitution Judgment in the sum of $222,255.08 without a hearing. See Bogren Affidavit, Ex. 6 at p. 55.

State criminal restitution judgments are intended to be compensatory. N.Y.Penal § 60.27(5)(b). If the record does not contain sufficient evidence to support a finding, "or upon request by the defendant," the court must conduct a hearing. N.Y.Penal § 60.-27(2). Sokol's attorney requested a hearing, at least obliquely, Bogren Affidavit, Ex. 6, p. 20, and on this basis alone, the Court arguably should have conducted a hearing.

■ It is not this Court's role to function as a state appellate court, but nevertheless, in applying collateral estoppel to dischargeability litigation, the Court applies federal principles. It is not clear that the parties ever actually litigated the amount of the compensatory damages to which the State was entitled under Section 145–b by virtue of Sokol's larceny. Because the parties never actually litigated this issue, collateral estoppel does not apply to the *amount* of the State's claim.

### D. Sokol's Response

Sokol's response primarily raises issues that are not properly before this Court. He attacks his criminal conviction, but he must do so in state court. In the event he prevails in his state appeal, he can return to this Court to vacate the judgment of nondischargeability, *In re Kelly,* 155 B.R. at 78, although that will probably be unnecessary because no "debt"—dischargeable or otherwise—will be due to the State. The Court has considered his remaining arguments, and concludes that they lack merit.

### CONCLUSION

The State is entitled to a declaration that the Restitution Judgment is not dischargeable. The State is also entitled to a declaration that its Treble Damage Claim is not dischargeable, although that claim has not been liquidated. The parties are directed to settle a final judgment on notice.

---

5. The Court can determine the dischargeability of an unliquidated debt without actually liquidating the debt. *First Fed. Sav. & Loan Ass'n of Rochester v. Kelley (In re Kelley),* 163 B.R. 27, 33 (Bankr.E.D.N.Y.1993); *U.S. v. Stelweck (In re Stelweck),* 86 B.R. 833, 835 (Bankr.E.D.Pa. 1988), *aff'd,* 108 B.R. 488 (E.D.Pa.1989). Section 523 governs the dischargeability of a "debt," and "debt" is broadly defined to include, *inter alia,* unliquidated debts. *See* 11 U.S.C. § 101(5) ("claim" includes an unliquidated right to payment); 101(12) (" 'debt' means liability on a claim").