OAKES, Senior Circuit Judge:
 

 The State of New York (“State”) appeals from the judgment of March 2,1995, and the opinion and order dated February 28, 1995, entered in the United States District Court for the Southern District of New York, Harold Baer, Jr., Judge,
 
 State of New York v. Sokol (In re Sokol),
 
 181 B.R. 27 (S.D.N.Y.1995)
 
 (“Sokol II”),
 
 affirming the August 11, 1994, amended decision and order of the United States Bankruptcy Court, Stuart M. Bernstein, Judge,
 
 State of New York v. Sokol (In re Sokol),
 
 170 B.R. 556 (Bankr.S.D.N.Y.1994)
 
 (“Sokol I”),
 
 holding as dischargeable the State’s claim against Abraham Sokol for treble damages, but refusing to liquidate that claim. The State asserts error based on the courts’ refusal to apply the doctrine of collateral estoppel and thereby resolve certain issues as a matter of law. First, the State argues that the bankruptcy court’s refusal to liquidate was error because state law provides that a restitution order establishes as a matter of law the minimum amount of the defendant’s larceny and, hence, the State’s right to recover a judgment for at least treble the restitution judgment amount. Second, the State asserts error in the district court’s findings that, although the restitution judgment was entitled to full faith and credit and was binding on both it and the defendants, it was not conclusive as to its amount because that issue had not been litigated. The State argues that this finding was incorrect because 1) state law governing criminal restitution orders provides that a hearing to determine the amount of the defendant’s gain need not be granted despite a defendant’s request if the record contains adequate information to determine the amount; and 2) the sentencing court specifically held that the trial record was sufficiently detailed to allow entry of a restitution order without a hearing, and expressly made findings as to the defendant’s gain based upon trial testimony.
 

 We hold that the bankruptcy court properly refused to apply the doctrine of collateral estoppel on the facts of this case. We therefore affirm the district court.
 

 I
 

 Facts
 

 In January, 1994, Abraham Sokol filed a voluntary Chapter 7 petition seeking,
 
 inter alia,
 
 to discharge various debts. In April, 1994, the State commenced an adversary proceeding under 11 U.S.C. § 523(a) to determine the dischargeability of two debts Sokol allegedly owed to the State. Those debts
 
 *305
 
 consisted of a $222,255.38 restitution judgment imposed as part of a criminal sentence, and a civil claim for treble damages brought under N.Y.Soc.Serv.Law § 145-b (McKinney 1983)
 
 [1]
 
 pending in state court based on the same conduct. The state court action has been stayed, initially pursuant to N.Y.C.P.L.R. § 1311(l)(a) (McKinney Supp. 1994), and currently by the filing of Sokol’s Chapter 7 petition.
 

 From April, 1987, through June, 1988, Sokol practiced as a radiologist and provided services under New York’s Medicaid program. In 1991, Sokol and eight eo-defendants were indicted for grand larceny in the first degree for stealing over $1 million from the State’s Medicaid program. All of Sokol’s co-defendants pled guilty; only Sokol went to a jury trial. The State also brought a civil action that year under § 145-b against Sokol to recover treble damages for injuries it sustained as a result of Sokol’s Medicaid fraud.
 

 In July, 1992, a jury convicted Sokol of one count of grand larceny by false pretense in the second degree, which requires proof that the property taken is valued at over $50,000 and up to and including $1 million.
 
 [2]
 
 At sentencing, Sokol’s counsel requested a hearing to determine the amount of restitution, pursuant to N.Y.Penal Law § 60.27(2), but the court refused to grant the hearing. Sokol was sentenced to three and one-half to ten and one-half years’ imprisonment and ordered to pay $222,255.38 in restitution to the State, as well as $200 in costs. A direct appeal of Sokol’s criminal conviction is still pending in the Second Department. The restitution judgment has been stayed pending the disposition of Sokol’s direct criminal appeal.
 

 On August 11, 1994, the bankruptcy court granted the State’s motion for summary judgment as to the nondischargeability of the restitution judgment.
 
 Sokol I,
 
 170 B.R. at 558. Bankruptcy Judge Bernstein held that Sokol’s conviction and restitution judgment were entitled to full faith and credit, and that the restitution judgment was nondischargeable as a matter of law under 11 U.S.C. § 523(a)(7) because it was imposed as part of a criminal sentence, and therefore was “penal” despite its compensatory nature.
 
 Id.
 
 at 559-61 (citing,
 
 inter alia, Kelly v. Robinson,
 
 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986);
 
 Thompson v. Virginia (In re Thompson),
 
 16 F.3d 576, 580 (4th Cir.1994)).
 

 The bankruptcy court also declared the State’s treble damages claim nondischargeable under 11 U.S.C. § 523(a)(7).
 
 Sokol I,
 
 170 B.R. at 561 (citing
 
 State v. Kelly (In re Kelly),
 
 155 B.R. 75, 79 (Bankr.S.D.N.Y.1993)). Judge Bernstein declined, however, to “decid[e] the amount, if any, of the State’s claim that is recoverable under Section 145-b,”
 
 Sokol I,
 
 170 B.R. at 561, explaining that because Sokol had requested, but had not received, a § 60.27(2) restitution hearing in state court, “[i]t is not clear that the parties ever actually litigated the amount of the compensatory damages to which the State was entitled----”
 
 Id.
 

 The bankruptcy court entered judgment on August 22, 1994. Sokol filed notice of appeal but failed to perfect it, and his appeal was thus dismissed on January 10, 1995. The State filed a timely notice of cross-appeal in district court on August 29, 1994.
 
 Sokol II,
 
 181 B.R. at 29. Arguing that the bankruptcy court erred in holding that the treble damages claim could not be liquidated, the State contended that the sentencing
 
 *306
 
 court’s decision as to the amount of the restitution judgment for the larceny conviction determines, as a matter of law, the amount to be trebled as damages for the § 145-b claim.
 
 Id.
 
 at 29-30.
 

 The district court affirmed the bankruptcy court’s judgment in its entirety on February 27, 1995.
 
 Sokol II,
 
 181 B.R. at 31. Judge Baer rejected the State’s argument that, once a defendant is convicted of larceny, § 145-b treble damages liability follows as a matter of law. Instead, he noted that § 145-b requires, barring a stipulation, that “the specific amount of the defendant’s theft must be determined” to calculate damages, “a task which necessarily implies that the issue be litigated____” Id. at 30. Observing that the jury found Sokol guilty of stealing somewhere between $50,000 and $1 million, and stating, albeit incorrectly, that “[t]he “State only presented evidence of the amount of Sokol’s theft at sentencing,”
 
 [3]
 
 Judge Baer found that “[t]hat hardly constitutes ‘litigating’ the issue.”
 
 Id.
 
 at 29. He therefore held that the Bankruptcy Court properly declined to apply the doctrine of collateral estoppel to the amount of the State’s treble damages claim.
 
 Id.
 
 at 30.
 
 [4]
 

 The district court entered judgment on March 6,1995. On March 27,1995, the State filed a timely notice of appeal.
 

 II
 

 Discussion
 

 We undertake a plenary review of orders of the district court acting in its capacity as an appellate court in bankruptcy cases.
 
 Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prod. Corp.),
 
 896 F.2d 1384, 1388 (2d Cir.1990). We review the bankruptcy court’s findings of fact for clear error, and its conclusions of law
 
 de novo. Id.
 

 Although the bankruptcy court was correct in not giving collateral estoppel effect to the criminal court’s determination of the amount of restitution, it incorrectly stated that “in applying collateral estoppel to dischargeability litigation, the Court applies federal principles.”
 
 Sokol I,
 
 170 B.R. at 561. Rather, the preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred—here, New York. 28 U.S.C. § 1738; 18 C. Wright, A. Miller & E. Cooper,
 
 Federal Practice and Procedure: Jurisdiction
 
 § 4469;
 
 Allen v. McCurry,
 
 449 U.S. 90, 95-96, 101 S.Ct. 411, 415-16, 66 L.Ed.2d 308 (1980). Actual litigation is not a requirement for collateral estoppel under New York law.
 
 See Lanzano v. City of New York,
 
 202 A.D.2d 378, 379, 609 N.Y.S.2d 891, 892 (1st Dep’t) (actual litigation not required so long as issue was necessarily decided by the underlying judgment),
 
 appeal denied,
 
 83 N.Y.2d 760, 616 N.Y.S.2d 14, 639 N.E.2d 754 (1994). Instead, New York law provides that the party seeking the benefit of collateral estoppel (here, the State) has the burden of demonstrating the identity of the issues and the necessity of their having been decided, and the party opposing its use (here, Sokol) has the responsive burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action.
 
 Kaufman v. Eli Lilly and Co.,
 
 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985);
 
 Ryan v. New York Tel. Co.,
 
 62 N.Y.2d 494, 501, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 491 (1984). The doctrine of collateral estoppel “is grounded on concepts of fairness and should not be rigidly or mechanically applied.”
 
 D’Arata v. New York Central Mutual Fire Ins. Co.,
 
 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24, 26, 564 N.E.2d 634, 636 (1990);
 
 see also Staatsburg Water Co. v. Staatsburg Fire District,
 
 72 N.Y.2d 147, 153, 531 N.Y.S.2d 876, 878, 527 N.E.2d 754, 756 (1988) (“Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as framework, rather than a substitute, for analysis.”).
 

 Assuming arguendo that the State has met its burden of proving identity of
 
 *307
 
 issue and necessity of the claim having been decided in the prior action, Sokol has met his responsive burden of establishing that he did not have a full and fair opportunity to litigate the issue in the prior criminal proceedings. Under New York law, a determination whether a full and fair hearing was provided “requires consideration of ‘the “realities of the [prior] litigation”, including the context and other circumstances which ... may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him’.”
 
 Ryan,
 
 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491 (quoting
 
 People v. Plevy,
 
 52 N.Y.2d 58, 65, 436 N.Y.S.2d 224, 228, 417 N.E.2d 518, 522 (1980). Factors to be considered include,
 
 inter alia:
 
 1) the nature of the forum and the importance of the claim in the prior litigation; 2) the incentive to litigate and the actual extent of litigation in the prior forum; and 3) the foreseeability of future litigation (because of its impact on the incentive to litigate in the first proceeding).
 
 Ryan,
 
 62 N.Y.2d at 501, 478 N.Y.S.2d at 827, 467 N.E.2d at 491. After reviewing the trial and sentencing transcripts, we believe that Sokol has met his burden based upon the entirety of the circumstances and the first two of these
 
 Ryan
 
 factors.
 

 The prior fora (both trial and sentencing) were criminal and thus carried vastly different penalties from the civil bankruptcy proceeding. Furthermore, the issue at trial was Sokol’s guilt within a certain range of damages not the precise amount of those damages. Although the precise amount of damages was important to the sentencing, the sentencing judge was not required to reach the conclusion that he did, as § 60.27 permits the court to sentence the defendant to either restitution or reparation. The nature and importance of the issues at trial and in bankruptcy court are thus dissimilar.
 

 We next examine Sokol’s incentive to litigate and the actual extent of litigation in the prior forum. The State argues that, because it was required to prove a minimum amount of theft as an essential element of the crime, the financial evidence was fully litigated. In fact, the reverse seems to be true. Sokol not only had no incentive to litigate damages, he did not actually do so. His entire trial strategy was dedicated to proving his innocence, not to proving a lesser degree of damages. He did not deny that over $1 million had been stolen from the State’s Medicaid Program; he denied that he was a participant in the larceny. The focus of the criminal trial was on Sokol’s knowledge of implicated billing practices and counterfeit sonograms, not on the amount stolen. Sokol never presented evidence as to the amount he stole, as that would have been inconsistent with a defense of innocence. While the State presented evidence as to the amount of loss sustained by the State’s Medicaid Program and attributable to Sokol, that evidence was minimal; one State witness testified that $101,830.00 of the stolen funds could be traced to Sokol’s account and that $120,425.00 could be traced to corporations in which Sokol had a minority interest.
 
 [5]
 

 The amount of damages sustained by the State’s Medicaid Program was no more thoroughly litigated at sentencing than it was at trial. The sentencing court looked primarily to the trial evidence, stating:
 

 The system is out 1.25 million dollars. There is no doubt in my mind the system is out that amount of money. Where it went, how much you got, how much ... all the others got, ... that’s to be resolved. All of the other participants have pled guilty and are subject for sentencing and they are going to have restitution figures.
 

 Sentencing at 41. He continued:
 

 The Court does not feel a hearing will be necessary for the purposes of restitution. The Court has conducted an eight-week trial and has heard plenty of testimony. I also have the written memorandum from the People. The testimony is there as to dollar amounts.
 

 I agree with defense counsel that a lot of numbers were thrown out by different people, but I have indicated I can make it easy and impose the full amount of 1.25 million
 
 *308
 
 dollars because there is no doubt that that amount was lost and I feel that there is adequate case law to allow me to do that. But, I would prefer to analyze it a little closer to try to come in with a more realistic figure.
 

 The Court is going to require restitution in the amount of $222,255.08 (sic). That figure is the $101,000.00 figure, roughly, that was mentioned by both counsel [as being the amount that could be traced to Sokol’s account] and the money that went to [corporations in which Sokol had a minority interest], the $120,425.00.
 

 Sentencing at 51-52. Although Sokol may have had more incentive to litigate the amount of damages at sentencing than he did at trial, he was not allowed to litigate such, as the court denied his request for a § 60.27(2) hearing on the matter. Although the third of the relevant
 
 Ryan
 
 factors weighs against Sokol because the civil proceeding was foreseeable at the time of the criminal trial, we nevertheless are convinced that he has proved the absence of a full and fair opportunity to litigate the amount of restitution as defined by New York law.
 

 Conclusion
 

 Because Sokol has shown that he was not provided a full and fair opportunity to litigate the issue of damages in the prior criminal trial and sentencing procedures, the bankruptcy court correctly declined to apply collateral estoppel to set the amount of damages to be held non-disehargeable at three times the restitution amount. We hereby affirm the district court and remand to the bankruptcy court with instructions to lift the automatic stay.
 

 [1]
 

 . Section 145-b provides, in pertinent part:
 

 1. It shall be unlawful for any person, firm or corporation knowingly by means of a false statement or representation, or by deliberate concealment of any material fact, or other fraudulent scheme or device, on behalf of himself or others, to attempt to obtain or to obtain payment from public funds for services or supplies furnished or purportedly furnished pursuant to this chapter.
 

 2. For any violation of subdivision one, the local social services district or the state shall have a right to recover civil damages equal to three times the amount by which any figure is falsely overstated or five thousand dollars, whichever is greater____
 

 [2]
 

 . Sokol was indicted and charged with grand larceny in the first degree.
 

 The difference between first and second degree lies in the value of the stolen property. Compare N.Y.Penal Law § 155.42 (grand larceny in the first degree (property valued at over $1 million)) with N.Y.Penal Law § 155.40 (grand larceny by false pretense in the second degree (property valued at over $50,000)).
 

 [3]
 

 . In fact, the criminal trial transcript and judge’s comments show that the State presented some evidence of damages at trial, and little if any additional evidence at sentencing.
 

 [4]
 

 . Judge Baer did not address the criminal court’s failure to provide Sokol with a hearing on the amount of restitution due.
 

 [5]
 

 . There was apparently no testimony as to what portion of those corporate billings were actually passed on to Sokol.